# United States Court of Federal Claims

No. 13-454 C
February 4, 2015

_____

**PROFESSIONAL PERFORMANCE
DEVELOPMENT GROUP, INC.,**

Subject Matter Jurisdiction; Contract
Disputes Act, 41 U.S.C. ¶ 7101-09

*Plaintiff*,

**v.**

**UNITED STATES OF AMERICA,**

*Defendant*.

_____

*Claude P. Goddard, Jr.*, Polsinelli PC, Washington, DC, for plaintiff.

*Zachary J. Sullivan*, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, DC, for defendant.

## OPINION *and* ORDER

**Block,** *Judge*.

Before the court is defendant's partial motion to dismiss for lack of subject matter jurisdiction, filed pursuant to Rule 12(b)(1) of the Rules of the U.S. Court of Federal Claims ("RCFC").

In this action, plaintiff, Professional Performance Development Group, Inc. ("PPDG"), challenges the decision of the United States Department of the Army ("Army") to partially terminate for cause three task orders. PPDG brings this suit under the Contract Disputes Act ("CDA"), 41 U.S.C. ¶ 7101-09 (formerly 41 U.S.C. §§ 601–13). In its prayer for relief, plaintiff requests the court to declare that it did not breach the terms of the contract, and to enter an order converting the partial termination by the contracting officer ("CO") for cause into a partial termination for convenience. But elsewhere in the complaint, plaintiff seems to assert that it is entitled to an equitable adjustment in the form of time extensions.

Defendant concedes that this court has jurisdiction over plaintiff's claim for declaratory relief, but seeks to dismiss PPDG's requested relief to the extent PPDG seeks an equitable adjustment or time extensions. The court finds, for the following reasons, that defendant seeks to dismiss a claim that PPDG is not actually pursuing in this case. The court accordingly denies defendant's partial motion to dismiss.

# I. BACKGROUND

The following is a brief account of the facts that are relevant to addressing defendant's partial motion to dismiss.

Plaintiff, Professional Performance Development Group, Inc., is a corporation that supplies government agencies, including the Department of Defense, with professional medical services.  Compl. ¶¶ 4-5.  On July 18, 2012, the Army awarded a contract to PPDG, Contract Number W91YU0-12-D-0009 ("The Contract"), to provide up to 20 full-time physicians or physician assistants/nurse practitioners ("PA/NPs") to conduct disability evaluations of military service members and to complete narrative summaries of their findings and recommendations as part of the Integrated Disability Evaluation System.[1]  Compl. ¶¶ 6-8; Mot. Dismiss at 2.  The parties refer to these physicians and PA/NPs collectively as "health care providers."

The Performance and Work Statement ("PWS") of the Contract required that the health care providers begin work no later than 90 days following the issuance of the task order.  PWS ¶ 1.1.13; *see* Compl. ¶ 14.  This 90-day maximum accounted for the time needed "for resume and credentialing requirements (and timelines)."  PWS ¶ 1.1.4; Compl. ¶ 14.  Aside from the 90-day deadline, the PWS included several other intervening deadlines.  For instance, the PWS required PPDG to submit CVs or resumes of the proposed providers "not later than (NLT) 30 days after the [task order] is issued for review prior to beginning the [sic] [credentialing] process."  PWS ¶ 1.7.1; *see* Compl. ¶¶ 16-20.  The PWS also required PPDG to "obtain privileges [for each health care provider] from the MTF Commander, prior to beginning work."  *Id.*

The Contract incorporates by reference a number of Federal Acquisition Regulations ("FAR"), including FAR 52.212-4, Contract Terms and Conditions—Commercial Items.  Section (m) of this provision allows the CO to terminate the contract for cause "in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance."  But "[i]f it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience."  FAR 52.212-4(m).

The Contract also contains an Excusable Delay Clause, which provides that in the event of nonperformance, "the Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence . . . ."  FAR 52.212-4(f).

The Army issued Task Order 2 on September 12, 2012, and issued Task Orders 3 and 4 on September 11, 2012.  Shortly afterward, on November 19, 2012, the CO issued a "Cure Notice" to PPDG, noting, *inter alia*, that over 60 days had passed since the issuance of task

---

[1] The Integrated Disability Evaluation System, promulgated by the Department of Defense, is used by the armed services to determine whether service members are physically fit for military service.  Service members who are found unfit are assigned a disability rating and retired from military service.  Compensation granted in the form of retirement or disability payments varies depending on the amount of service rendered by the soldier and the extent of the soldier's disability, as denoted by the assigned disability rating.  *See Grooms v. United States*, 113 Fed. Cl. 651, 655-56 (2013) (providing an overview of the Disability Evaluation System).

orders 2 and 5, and that PPDG had thus far obtained credentials for only 2 of the 20 positions required under the terms of the task orders.[2]

The CO subsequently issued two Show Cause letters that complained of similar failures by PPDG to meet the deadlines set forth in the PWS.  *See* First Show Cause Notice, Dec. 13, 2012, A019; and Second Show Cause Notice, Dec. 18, 2012, A020.  The CO stated that PPDG had "failed to cure the performance issues as previously noted and has failed to provide adequate assurance that they can comply with the requirements of the contract despite more than ample opportunity to do so."  First Show Cause Notice, A019.  The CO contended that "[i]t is necessary to determine whether [PPDG's] failure to perform arose from causes beyond [PPDG's] control and without fault or negligence on [PPDG's] part before a final decision can be made," and offered PPDG 10 days "to show cause as to why the positions should not be terminated."  *Id*. *See also* Second Show Cause Notice, A020 (offering PPDG 10 days to show cause as to why three of the Task Orders should not be partially terminated).

PPDG responded to these three notices by describing its efforts to meet the deadlines as well as some of the obstacles it had encountered in the course of performance, and by reiterating its commitment "to fulfilling all terms and conditions of [the] contract."  *See* Response to Cure Notice, Nov. 26, 2012, at A015; Response to Show Cause Notices, Dec. 21, 2012, A022-A028.

 On January 28, 2013, the CO issued a "Contracting Officer's Final Decision," partially terminating for cause four task orders.  Final Decision, A032.  The CO provided the following explanation for this action:

> The specific reasons for the terminations are due to PPDG's failure to furnish the required services as specified in the task orders, non-compliance with the credentialing and other requirements listed in paragraph 1.1.6 of the contract's Performance Work Statement.  Additionally, the reasons provided in [PPDG's responses] are not adequate excuses or explanations for the failure to meet the task order requirements for such an extended period of time.

Final Decision, A032.

On July 2, 2013, PPDG filed this CDA suit in the U.S. Court of Federal Claims, claiming that the CO's decision to partially terminate for cause Task Orders 2, 3 and 4 "was arbitrary, capricious and contrary to the terms of the contract."  Compl. ¶ 18; *see also* ¶¶ 2, 62, 70.  PPDG argues that it is entitled to an order converting the partial termination for cause into a termination for convenience of the Government for the following three reasons: (1) PPDG argues that it was in "substantial compliance" with the contract, (2) PPDG argues that its purported failure to meet the deadlines is excused by delays on the part of the government, and (3) PPDG argues that the Army by its actions waived the submission deadlines.

---

[2] The reference to 20 providers was to the 20 providers required for Task Orders 2, 3, 4 and 5. Only Task Orders 2, 3 and 4 are at issue in this case.

# II. DISCUSSION

When considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). Nonetheless, the court may consider any relevant evidence, even beyond the pleadings, if the motion to dismiss challenges the jurisdictional facts of the case. *See Fisher v. United States*, 402 F.3d 1167, 1181-83 (Fed. Cir. 2005). Ultimately, the plaintiff has the burden of establishing that this court has jurisdiction over its claims by a preponderance of the evidence. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746, 747 (Fed. Cir. 1988).

## A. Subject Matter Jurisdiction

The Tucker Act confers jurisdiction on this court "to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." Undisputedly, this jurisdictional grant encompasses cases brought by plaintiffs under the Contract Disputes Act—the Tucker Act specifically provides jurisdiction over "any claim by or against, or dispute with, a contractor arising under section 7104(b)(1) of title 41 [of the CDA]."

The CDA, in turn, grants this court jurisdiction over actions brought by contractors on a "claim" and filed within twelve months of a CO's final decision on that claim. Pub. L. No. 111-350, § 3, 124 Stat. at 3829 (codified at 41 U.S.C. § 7104(b)); *see James M. Ellett Const. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996). The CDA does not explicitly define what a "claim" is. The court, accordingly, looks to the implementing regulation, which defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. (FAR) 2.101. *See also Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1573 (Fed. Cir. 1995) (explaining that the CDA does not define "claim," and that FAR 33.201 [now FAR 2.101] "alone defines 'claim' for purposes of the CDA").

Stated otherwise, in order for this court to have jurisdiction under the CDA, "a contractor must make a written, non-routine demand to a contracting officer, request a final decision, and seek the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising from or relating to the contract." *Ace Constructors, Inc. v. United States*, 70 Fed. Cl. 253, 266 (2006), *aff'd*, 499 F.3d 1357 (2007).

## B. Defendant's Partial Motion To Dismiss

As mentioned briefly in the Introduction, plaintiff's prayer for relief is limited to declaratory relief—plaintiff asks this court to declare that it did not breach the terms of the contract and to enter an order converting the CO's partial termination for cause into a partial termination for convenience. *See* Compl. at Prayer for Relief. But in the section of the complaint alleging excusable delay, PPDG asserts, in passing, that it is entitled to an equitable

adjustment in the form of a time extension equaling a total of 67 days, due to actions by Army officials.  *See* Compl. ¶¶ 52-53, 69.

Perhaps acting out of an abundance of caution, defendant requests the court to dismiss PPDG's putative claims for equitable adjustments and time extensions based on the Army's delay.  Mot. Dismiss at 22.  Defendant argues that this court has no jurisdiction to hear these claims on the ground that PPDG failed to present a valid claim for such relief to the CO, as required by the CDA.  *Id.*  According to defendant, the CO's Final Decision, issued on January 28, 2013, only concerned the CO's decision to partially terminate for cause three task orders.  Mot. Dismiss at 19-20.  Defendant does not dispute this court's jurisdiction to hear a challenge to the CO's partial termination for cause decision.

Plaintiff, in response, concedes that its complaint "*alleged* that PPDG was entitled to two equitable adjustments," but argues that PPDG "*did not request* relief in the form of a contract adjustment."  Pl.'s Opp'n at 7 (citing Compl. ¶¶ 52, 53, 59 and Prayer for Relief) (emphasis added).  Rather, PPDG merely "asked for declarations that it was excusably delayed as a basis to convert the termination for cause into a termination for the convenience of the Government."  *Id.* In fact, PPDG asserts that it "intends to file a separate claim with the Contracting Officer asserting entitlement to a contract adjustment in the form of time extensions and monetary relief."  *Id.* at 7 n.2.  In light of this stipulation, the court finds that there is no real dispute here.

In any event, the court finds it clear from the face of the complaint that plaintiff only seeks declarative relief in this case that it did not breach the terms of the contract.  Viewed in context, plaintiff's excusable delay argument is not a separate claim seeking an equitable adjustment, over which this court has no jurisdiction due to the absence of a final decision on the matter.  Rather, plaintiff advances its excusable delay argument to challenge the CO's Final Decision to partially terminate for cause the task orders.  For instance, in both the first and second show cause notices, the CO invites PPDG to provide an explanation for its failure to meet its deadlines.  *See, e.g.,* First Show Cause Order, A019 ("It is necessary to determine whether your failure to perform arose from causes beyond your control and without fault or negligence on your part before a final decision can be made.").  Moreover, the CO's Final Decision clearly demonstrates that the CO considered the explanations provided by PPDG in its responses and found them inadequate.  *See* Final Decision, A032 ("the reasons provided in [PPDG's responses] are not adequate excuses or explanations for the failure to meet the task order requirements for such an extended period of time").

## III. CONCLUSION

For the reasons set forth above, defendant's partial **MOTION** to dismiss under RCFC Rule 12(b)(1) is **DENIED**.  Additionally, the parties **SHALL FILE** by Friday, February 13, 2015, a **JOINT STATUS REPORT** suggesting a procedural course for resolving this matter.

   **IT IS SO ORDERED.**

*s/ Lawrence J. Block*

Lawrence J. Block
Judge